No. 29,928.

Ernest Miller, *Appellee*, v. G. E. Fike et al., *Appellants.*

(299 Pac. 259.)

Opinion filed May 9, 1931.

*Frank J. Horton, Forrest J. Horton* and *Elmer E. Euwer*, all of Goodland, for the appellants.

*John Hartzler*, of Goodland, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an action to recover the agreed price for harvesting barley and to enforce a harvester's lien authorized by statute. (R. S. 58-203 to 58-206.) The defendants were G. E. Fike, a grain man, who purchased the barley after it was threshed, L. L. Chaffin, the owner of the real property on which the barley was grown, and T. V. Lowe, who had made the contract with plaintiff for the harvesting of the barley. The barley was harvested in 1928, and on August 11, soon after the harvesting was completed, plaintiff filed with the register of deeds his statement claiming a lien against Chaffin only. In his petition, filed in September, 1929, he alleged notice of filing the lien was given to the other defendants. After the opening statement of counsel the defendants severally moved for judgment, on the ground that the action had not been brought within ninety days after filing the lien statement, as required by R. S. 58-205. The court sustained the motion as to the defendant Fike, but overruled it as to the other defendants. The motion was good as to the other defendants in so far as the action upon the lien statement was concerned, but plaintiff had alleged a contract for the harvesting of the barley with the defendant Lowe, and as finally amended the petition alleged that Lowe was the agent of and made the contract on behalf of the defendant Chaffin. Hence the question of the harvester's lien went out of the case, which proceeded upon plaintiff's allegations with respect to his contract with the defendants Lowe and Chaffin. Judgment was for plaintiff, and the defendants Lowe and Chaffin have appealed.

On behalf of the appellant Chaffin it was argued there was no evidence to sustain the judgment against him. Chaffin lived in Nebraska. Plaintiff had never met him nor had any communication directly with him. If there could be any recovery against him it would be upon proof that Lowe, in making the contract with plaintiff for harvesting the barley, was the agent of and acting for Chaffin. It is argued there is no such proof. We are unable to find any proof of such agency in the record. The evidence disclosed that Lowe rented from Chaffin the land on which the barley was grown under a parol lease by which it was agreed that Chaffin was to furnish the seed barley, Lowe was to put the crop in, harvest, thresh, and deliver it to market without expense to Chaffin, and Chaffin was to receive as rent for the land and for the seed which

he furnished one-half of the barley delivered to market. There is no controversy in the evidence about the terms of this lease or the conditions under which the barley was grown. It was therefore Lowe's business to have the barley cut on his own account, and when he made an agreement with plaintiff for the harvesting of the barley he was acting for and on behalf of himself and not as agent for Chaffin. When he bargained with plaintiff for harvesting the barley he did so on his own account—Chaffin's name was not mentioned. The result is, the judgment against Chaffin must be set aside for lack of evidence to sustain it.

The judgment in favor of plaintiff and against Lowe stands on a somewhat different footing. It was Lowe's duty, under his lease with Chaffin, to have the barley cut. He engaged plaintiff to cut it and agreed to pay him. The work was done and Lowe owed plaintiff, but in his answer Lowe pleaded a settlement. He alleged that in June, 1928, he and plaintiff entered into a written agreement by which he was to sell and convey to plaintiff a certain quarter section of land in Colorado for $1,000; that plaintiff paid $150 in cash and delivered to Lowe ten calves at an agreed price of $35 each, making a total credit on the purchase price of the Colorado land of $500. Lowe further alleged that he was delayed in perfecting title to this land so as to convey it to plaintiff, and finally, on June 3, 1929, plaintiff was insisting on having the title to the land, or receiving back payments he had made thereon, and also pay for cutting barley for Lowe. The parties met and had a settlement and agreed that the amount due plaintiff from Lowe was $948.65. This included the $500 plaintiff had paid or received credit for on the Colorado land and the agreed price for the harvesting of the barley, with interest on those items from the time of payment, or from the time the work was done, to the day of settlement. On that date Lowe paid plaintiff $647.06 and executed to plaintiff his promissory note, due in thirty days, for the balance, $301.59. Plaintiff, in his reply, admitted this settlement except he alleged that he accepted Lowe's note for the balance with the understanding it would be paid when due, and if not, he could still enforce his harvester's lien. It will be noted that the time for the enforcement of the harvester's lien had expired long before the date of this settlement. On the trial both the plaintiff and the defendant Lowe testified to this settlement. It was also testified to by plaintiff's

wife. Lowe admitted having executed the note given in settlement and offered two excuses for not having paid it. One was that at the time of the settlement Miller agreed to take the Colorado land back if Lowe could perfect the title to it, and he testified he did perfect the title in about two weeks after the settlement with the plaintiff and tried to get him to take the land, and he refused to do so. Since the prior agreement had been abrogated by the settlement, and no new agreement made in writing, Lowe was not, of course, in position to insist on plaintiff taking the land. His other explanation was that he would have made a profit on the land if Miller had taken it; that he had taken the calves in at much more than they were worth, and since Miller had declined to take the land, he thought he was entitled to an offset on the note. But if he wanted any offset on the note the time to have it was when he was making his settlement with plaintiff on June 3, 1929. This action, however, is not a suit on the note. Plaintiff's testimony was to the effect that if Lowe had paid the note everything would have been all right, but not having paid it when it was due he thought he still had a right to enforce his harvester's lien against Chaffin, hence this action. As we have heretofore seen, he filed this action too late to enforce his harvester's lien against anyone, and he never had a cause of action against Chaffin, hence his reasons for ignoring the settlement are not well founded. Having made a settlement with Lowe, and having received pay in part for the harvesting of this crop, and having taken Lowe's note for the balance of it, his action should have been on the note. Plaintiff did not seek to set aside the settlement, nor did he tender back Lowe's note. He still held it at the time of the trial of this case. Since, by the pleadings and the evidence respecting this settlement, there is no controversy between the parties there is no purpose in having a new trial on this issue.

The judgment of the court below is reversed, with directions to enter judgment for defendants.